PRESTON, DEMANDANTE Y APELANTE, *v.* LUYANDO, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre desahucio.

No. 2536.—Resuelto en enero 12, 1923.

DESAHUCIO—CONTRATO PERSONALÍSIMO—APODERADO. — La prueba practicada en este caso demuestra que el demandado ocupa la finca de que se trata a virtud de un contrato, cuya naturaleza no es propia para ser fijada en un juicio de desahucio, celebrado con el antiguo dueño de la finca y ratificado al morir éste por su viuda, y que ausente de la isla la viuda, se inició este pleito

por su apoderado que no demostró haber recibido ninguna instrucción especial. *Se resolvió:* que actuó en justicia la corte de distrito al declarar, como declaró, la demanda sin lugar.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. F. González.*

Abogado del apelado: *Sr. F. Cervoni.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Se trata de un caso de desahucio. En la demanda se alega que la demandante es dueña de una finca rústica situada en el barrio de Río Blanco, de Naguabo, compuesta de veintidós cuerdas, con su título inscrito en el registro y que dentro de esa finca, ocupando una superficie "como de dos cuerdas próximamente," se encuentra el demandado, sin pagar canon o merced. Que el demandado fué requerido para desalojar la porción de terreno que ocupa y se negó a ello.

El demandado alegó que la demanda no aducía hechos suficientes para determinar una causa de acción, negó general y especialmente todos y cada uno de los hechos de la demanda y, como materia nueva, expuso:

"Que según la información y creencia del demandado, la demandante doña Florence E. Preston, que reside actualmente en Estados Unidos, es ajena y no tiene conocimiento de esta demanda, que ha sido establecida por el señor Carlos Maymí, que es un encargado de dicha señora y que, sin autorización ni consentimiento de ella, ha entablado en su nombre esta demanda.

"Y alega, además, que el demandado hace siete años que habita en una finca de la demandante, que no es la que se describe en la demanda, llamado y consentido por la demandante y el causante de ella don Gustavo Preston, para que el demandado viviera y trabajara en ella. En este sentido el demandado, ha edificado allí su casa vivienda y ha sembrado una cuerda de café, dos de malangos, media de batatas, un cuadro de yautías, media cuerda de yuca y cien árboles de gandules, todo lo cual tiene un valor de seiscientos dollars. Y estos cultivos los ha hecho y los hace el demandado sin que haya sido prohibido ni impedido por persona alguna."

La demandante solicitó la eliminación de la "materia

nueva'' y así lo ordenó la corte, tomando excepción el demandado.

Toda la prueba practicada consistió en una certificación expedida por el Registrador de la Propiedad de Humacao creditiva de que la finca de veintidós cuerdas que se describe en la demanda está inscrita a favor de la demandante y en las dos declaraciones que siguen:

"La demandante presentó como testigo a Carlos Maymí Salgado el cual después de prestar juramente, siendo examinado por el abogado de la demandante declaró como sigue: que se llama Carlos Maymí Salgado, *Administrador de la viuda del señor Preston* y conoce la finca Florida que está compuesta de tres parcelas distintas: hay la finca grande que son cuatrocientas setenta y ocho cuerdas, otra finca más denominada ''Cercado'' de treinta y dos cuerdas y otra más pequeña que se llama las veintidós cuerdas que es la que ocupa el demandado y está al lado del río Hicaco colindando por el este o sea el saliente con el río Hicaco, por el sur y oeste con un tal Hernández y terrenos que tiene la sucesión de los señores Borges, por el norte hoy los Roger; que esos terrenos de los Roger eran antes de la Condesa de Galves: que en las veintidós cuerdas reside el demandado y un yerno de él sin satisfacer cantidad alguna por ello, pues no paga nada y lo ha requerido para que salga de la finca hace tres meses y no la ha desocupado.

"Repreguntado por el abogado del demandado declaró que hace tres meses que requirió a Luyando para que desocupara la finca: que lleva seis u ocho meses *como administrador* y un año antes como Mayordomo y hace cerca de dos años que entre *mayordomo y administrador* está en la finca y *cuando entró en ella como mayordomo ya Luyando vivía allí: que no le consta quién lo puso allí ni si él vivía allí o no pero le han informado algunas personas y el mismo Luyando que está allí hace siete años ignorando el motivo porque él vive allí:* que tiene como cuarenta o cincuenta dólares en café y además algunas matas de guineo; que la casa en que él vive es de la finca, pues Luyando solamente tiene de la casa tres solares y un estante: que cuando el declarante llegó a la finca Luyando ocupaba una casita propiedad de la finca y empezó a desbaratar la casa para hacer otra nueva que es en la que él vive: *que como Administrador de la finca para lo único que no está autorizado es para vender, pero está autorizado para hacer cualquier cosa en representación de la*

*señora Preston:* que no tiene aquí el poder, pero puede asegurar que lo tiene en su caja de caudales y no lo trajo porque creía que no era necesario y *además su abogado no le aconsejó que lo trajera:* que cuando fué a la finca el administrador anterior era el señor Lavergne y cuando llegó allí el señor Luyando empezó a desbaratar la casa para hacerla de nuevo y Lavergne estaba enfermo y llamó a Luyando y le dijo que no le autorizaba para hacer el cambio: que sabe que el administrador anterior quería lanzarlo de la finca y el declarante le recomendó que no lo hiciera: *que la señora Preston no le hizo ninguna recomendación al declarante,* pues después que el que habla lo recomendó bien estaba demás que ella lo recomendara: que el señor Lavergne lo quería lanzar y el declarante compadeciéndole porque se trataba de un pobre viejo lo recomendó a la señora Preston y después quedó el declarante como administrador.

"Terminada la prueba de la demandante el demandado presentó al testigo Ramón Luyando, quien después de prestar juramento fué examinado por su abogado y declaró como sigue: que se llama Ramón Luyando, vive en Río Blanco arriba barrio de Naguabo en la finca de don Gustavo Preston, que es hoy de la señora doña Florencia y hace unos siete años que vive allí: que antes vivía en una finca de su propiedad que tenía en Maizales y *siempre ha servido a don Gustavo Preston hace como veintiún años* y la finca esa era de don Pablo Maldonado: *que fué a vivir a esa finca* porque don Gustavo se la entregó diciéndole *que se viniera para acá y vendiera el pedacito de terreno que tenía,* porque el declarante era un hombre que le había hecho muchos beneficios y quería tenerlo a su lado para cualquier cosa que necesitara: que allí existía una casa vieja que estaba cayéndose y un día don Gustavo le preguntó si se acostumbraba y le contestó que no porque la casa se estaba cayendo y le dijo que lo estaba esperando para ver si le daba el permiso para poner otra casa porque tenía en su finca dos casas, vendió una y se trajo la otra comprando más maderas para fabricar porque él podía hacer una casa buena *si le vendía un pedacito de terreno y don Gustavo le dijo 'yo no se lo vendo pero se lo doy para que siembre y cultive de todo para que cuando usted esté un poquito anciano que usted no pueda ganar un jornal tenga algo;' que don Gustavo murió y la señora sabía que el declarante vivía allí,* porque ella vino y lo mandó a buscar y le preguntó si era la persona de Ramón Luyando y al contestarle que sí le replicó que había estado mucho con su marido y que *él le encargó que lo considerara y entonces llamó al señor Maymí y le dijo que tuviera cuidado porque él era*

*un hombre que don Gustavo lo apreciaba mucho.* Que esto fué en su presencia y le dijó que lo interpretara así, que se lo dijera en español para que supiera lo que ella le decía: que él contestó las palabras que ella le dijo: que las palabras fueron que lo consideraba mucho y le diera trabajos que pudiera hacer, pues era un hombre avanzado y que atendiera al bien de él: *que lo dejaron allí y que nadie tenía que intervenir con él:* que el declarante no tenía que intervenir con él: que el declarante no tiene otro sitio donde vivir ni otra casa que la que hizo en la finca: que no tiene nada más que los frutos sembrados. Repreguntado por el abogado de la demandante declaró que él vivía en esa finca con el consentimiento de don Gustavo y de su señora: que no paga cantidad alguna por estar allí, solamente voltear las colindancias y también anteriormente tenía hecha entrega de unas diez y seis o veinte cabezas de ganado que cuidaba sin darle un vellón: que ahora después que sacaron el ganado no paga nada y lo que hace es trabajar en la hacienda.'' Las itálicas son nuestras.

La corte dictó finalmente sentencia declarando la demanda sin lugar y la demandante interpuso entonces el presente recurso de apelación.

No constan los fundamentos que tuvo la corte de distrito para dictar su sentencia. La parte apelada no presentó alegato ni compareció a la vista del recurso. Sólo hemos oído al apelante que alega ''que la corte cometió error al declarar sin lugar la demanda, porque, la sentencia dictada es contraria a la prueba.''

A nuestro juicio la corte erró al decretar la eliminación de la ''materia nueva'' pero el error carece de importancia ya que se permitió al demandado en el acto de la vista introducir prueba sobre ella.

Es éste un caso digno de estudio. En la demanda se alegó que el demandado sólo ocupaba dos cuerdas de terreno en una finca de veintidós, sin describir la porción ocupada. La prueba tendió a demostrar que el demandado ocupaba toda la finca de veintidós cuerdas. Pero no es este detalle de importancia decisiva.

Estamos conformes con el apelante en que la evidencia

demostró que la finca pertenecía a Florence E. Preston y en que el demandado no tiene derecho alguno al dominio de las tierras que ocupa, sean dos o veintidós. No es éste, pues, el caso que tantas veces se presenta en que surge un conflicto sobre la propiedad. El demandado es un simple poseedor, pero alega y prueba, a nuestro juicio, que entró y está en posesión a virtud de un contrato celebrado con el antiguo dueño de las tierras, ratificado después por su esposa Florence E. Preston, cuya naturaleza no es propia para ser fijada, atendididas las circunstancias de este caso que seguida examinaremos, en este juicio de desahucio.

Según la sección primera de la ley de desahucio tienen acción para promover el juicio "los dueños de la finca, los usufructuarios y cualquiera otro que tenga derecho a disfrutarla, y sus causahabientes."

La demanda comienza: "Comparece la demandante, por conducto de su abogado  *  *  *" y la persona que figura como demandante es realmente la dueña. Pero la prueba demuestra que personalmente la Sra. Preston no autorizó esta acción. Su iniciación se debe a su *se dicente* administrador Maymí. Este declaró que tenía facultades para todo en relación con los bienes de su poderdante, excepto para venderlos. Quizá sea así, pero demostrando como demuestra la prueba, una relación personalísima entre el demandado y los dueños anterior y actual de la finca, debió haber por lo menos versado la declaración de Maymí sobre alguna instrucción especial.

Durante la discusión de este caso se ha sostenido que sería ir en contra de los bien establecidos principios que regulan las relaciones entre abogado y cliente el llegar a la conclusión que hemos llegado, ya que apareciendo redactada la demanda en la forma en que lo está, debe presumirse que la Sra. Preston, la dueña del terreno, autorizó directamente al abogado. No estamos conformes. Los bien establecidos principios subsisten. El abogado actuó correctamente. Siguió las

instrucciones del administrador, a quien consideró con poder bastante, y redactó la demanda en propia forma. Lo que sucedió fué que la prueba, admitida sin objeción, puso de manifiesto, por lo menos, que era dudosa la facultad que asumió el administrador dadas las circunstancias especialísimas del caso, y siendo ello así, estuvo justificada la corte sentencia-- dora al actuar en la forma en que lo hizo, atendidas todas las circunstancias del caso.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Hutchison y Franco Soto.

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.

OPINIÓN DISIDENTE DE LOS JUECES ASOCIADOS SRES. WOLF Y ALDREY.

La probabilidad es que la corte inferior creyó que existía un conflicto de títulos o algo semejante a esto en cuanto a ellos y por consiguiente erróneamente, a mi entender, se negó a dictar sentencia. No se ha emitido ninguna opinión. Esta Corte resuelve que hubo un contrato probado celebrado entre el causante de la demandante y el demandado, pero en la opinión de la mayoría ni siquiera se trata de decir qué clase de contrato era éste o su duración si tenía alguna. Generalmente, y en relación con terrenos, existen arrendamientos o permisos o algo derivado de un título completo o alguna cosa inferior a esto. Decir que el demandado está en posesión por virtud de un contrato, meramente expresa una conclusión de cierta premisa indefinida. Más categóricamente yo diría que estando admitido el título de la demandante el demandado estaba obligado a probar que él tenía derecho a la posesión y para eso necesitaba él algo más que las supuestas vagas promesas hechas por un hombre que había muerto y no podía declarar y una supuesta ratificación. Si los contratos de arrendamiento pudieran probarse en esta forma indefinida

la ley de desahucio probablemente pronto se convertiría en una letra muerta.

La corte inferior eliminó la defensa que se trató de establecer, a saber, que el abogado que compareció no tenía la debida autorización para representar a la demandante. Por tanto no estaba debidamente ante esta Corte, especialmente toda vez que el demandado no apeló ni pudo apelar.

A mi juicio, la opinión de la mayoría resuelve necesariamente que sin una alegación con tal fin el derecho de un abogado a representar a su cliente puede ser impugnado por el apelado en apelación. Las autoridades demuestran que la forma adecuada de atacar el derecho de un abogado a representar a su cliente es mediante moción, o algo por el estilo, hecha antes del juicio. 6 C. J. 635.

Fué cierto que el apoderado de la demandante dijo algo en cuanto a que él y no la demandante autorizó la comparecencia del abogado, pero la manifestación hecha por el testigo que no es contestación a ninguna cuestión en cuanto a este particular en el caso, no era obligatoria para el abogado. El apoderado, sin embargo, declaró que él tenía la debida facultad para emplear un abogado. La presunción sería que cuando un abogado compareció él había obtenido una autorización directa. 6 C. J. 631. La Sra. Preston puede haberse comunicado directamente o autorizado a su apoderado para utilizar un abogado. Todas estas cosas están dentro de la importante presunción de que cuando comparece un abogado él actúa con la debida autoridad. Es necesaria una notificación especial para impugnar la facultad de un abogado.

No se hizo ninguna impugnación adecuada en la corte inferior respecto a la facultad del abogado, y esa facultad, en mi opinión, no podía propiamente ser puesta en tela de juicio en este Tribunal. 6 C. J. 635, nota 10.

Por estas razones disiento.